Nott, J.,
delivered the opinion of the court:
According to the law of England a mortgage was a conveyance subject to a defeasance; the legal estate passed to the mortgagee, and the mortgagor remained the owner of a mere equity of redemption. In this country a mortgage has long been regarded as merely creating a lien or incumbrance upon the land, the legal estate remaining in the mortgagor, and a foreclosure being ordinarily nothing more than a proceeding to procure the sale of the pledged property and a payment, out of the proceeds, of the mortgage debt. Nevertheless, under neither the earlier English nor the more modern American law can a mortgagor commit waste upon the land nor impair the value of the security.
In the State of Tennessee these transactions are carried on, and the sale and transfer of land is effected by means of an instrument under seal in the form of a bond, whereby the vendor covenants to convey the property upon the future payment of the purchase-money, and the vendee covenants to make pay *132 ment at a designated time. Generally snob an instrument would be regarded as nothing- more than a contract of sale, and the vendee, complying with the conditions of the bond by making or tendering payment, would be obliged to go into a court of equity and procure a decree for specific performance should the vendor neglect or refuse to execute a deed. The courts of Tennessee, however, have held that these instruments, which are there termed title bonds, pass an equitable estate to the vendee, and the legislature has enacted that in suits between the vendor and vendee the legal estate shall be deemed to pass upon the payment of the purchase-money, without act or deed of the vendor. (Acts 1867, 1868, Code 1884, § 3968; Gudges v. Barnes, 4 Heiskell, 570.) The title bond, as thus construed, therefore, combines within itself the elements of a deed, a mortgage, and a. contract of sale.
The Direct Tax Act, 1861 (12 Stat. L., §36, p. 292), provides that the surplus of tax sales shall be i>aid to the “ owner ” of the property. The word “ owner,” if it be applied to real property, is necessarily a very comprehensive term. When one person can say that he is the owner of the legal estate, and another that he is the owner of the equitable, a third that he is the owner of an estate for life, and a fourth that he is the owner of the remainder, a fifth that he is the owner of an estate in fee-simple, and a sixth that he is the owner of an estate for years, a seventh that she is seized of right of dower, an eighth that he is tenant by courtesy, and a ninth that she holds a rent-charge upon the property, it is manifest that the term “owner” was intended to include every kind of estate or equity which should rightly entitle a person to the whole or a portion of the surplus. In Tennessee, for illustration, a leasehold, which at the common law would have been personal estate, has become by statute (Code, § 51) real estate. (Kelley v. Shultz, 12 Heiskell, 218.) No man is the owner of land, but only of an estate, or equity, or interest therein. In those cases where the claimant was the owner of an estate in fee-simple absolute, free and clear of liens and incumbrances, it is incontrovertible that he was the “ owner ” within the meaning of the statute. But such simplicity of tenure Joes not always characterize the cases which come before a court; and where no such estate existed it is nevertheless clear that some person is still entitled to the surplus; and that the court must pass to other estates in de *133 termining the right; and that no technical answer should be given to the question, who was the owner of the property within the intent of the direct tax acts; and that no narrow construction should be allowed to defeat the just and reasonable purpose of those statutes.
The law of real property is the law rei siti, and the Federal courts in matters of realty follow the decisions of the courts of the several States. Accordingly, it must be held of property in Tennessee that the purchaser in possession under a title bond, who at the time of the tax sale had complied with its conditions by the payment of the purchase-money, was, as against the vendor, the owner of the property, though no formal conveyance of the title had passed; and, conversely, that a purchaser in possession under a title bond who had not yet complied with its conditions by making payment of the purchase-money was to all intents and purposes a purchaser who had taken a deed and given back a mortgage. Whether he should be regarded as a mortgagor in the American sense of the term or in the English sense of being the owner of an equity of redemption only is not so clear; but nevertheless the Supreme Court of Tennessee has held in the strongest possible case (where the legal estate was expressly reserved to the vendor) that the relation of the parties is that of mortgagor and mortgagee, and that the vendor’s suit in equity upon a title bond is not an action for possession of the land, but to enforce a lien whereby the land shall be sold and the debt be paid out of its proceeds. (Gudges v. Barnes, 4 Heiskell, 570.)
Is a mortgagor in possession who when he comes into court to seek a surplus of property sold for taxes is in default in the payment of the i>urchase-money or mortgage debt, is he the “ owner” of the property within the intent of the statute?
As has been said, under both the English and American systems of mortgage law, the mortgagor in possession cannot commit waste nor impair the value of the security. The rule is well settled that taxes must be paid by the life tenant (Cuthbert's Case, 20 C. Cls. R., 172), and a general principle of mortgage law makes the party in possession, whether he be mortgagor or mortgagee chargeable with the duty of keeping down the taxes. If the mortgagor in possession cannot commit waste upon the realty, he cannot by his neglect suffer the security to be destroyed. Were a man to purchase land in consideration *134 of $1 in band and $10,000 to be paid by future installments, and were he to allow the land to be sold for taxes before paying one installment, and while his actual interest in it could be estimated by the single dollar which he paid as a present consideration, it would be evident that he could not be the “ owner” whom Congress had in view when enacting that the surplus should be held ufor the use of the owner or Ms legal representatives,,” Yet the difference between the ordinary case where the mortgagor has paid in part and the suppositional case where he is wholly indebted to the mortgagee for the purchase-money is a difference in degree and not in kind. In all cases the mortgagor who allows the property to be sold for taxes is chargeable with allowing the security to be destroyed; and the surplus of the sale, if any there be, is a fragment of the security to which the mortgage properly attaches. (Elliot's Case, 20 C. Cls. R., 328.) Whether in cases where the surplus exceeds the balance of the mortgage debt the mortgagee may recover the whole and hold the excess as trustee for the mortgagor, or whether both mortgagor and mortgagee must be before the court, is a question which need not now be determined. But if a suit can be maintained by the one to the exclusion of the other there is a strong reason for saying that the proper party will be the one who is not in default and who has the superior equity in the proceeds.
Iu the present case it does not appear that the surplus in the Treasury exceeds the amount of the mortgage debt; and, on the contrary, it may be inferred from the allegations of the petition and the testimony of the claimant’s witnesses that he was in default to his vendor for a much larger sum than he now seeks to recover, and that before this suit was brought he was ousted from possession by a decree in chancery in the nature of a foreclosure. Therefore he cannot be deemed either the legal or the equitable owner of the property, or entitled either in law or equity to the surplus in the Treasury.
The judgment of the court is that the petition be dismissed.